**Tobias MARTINEZ, Dorothy Franco, and Katherine Williams, individually, and on behalf of all others similarly situated, Plaintiffs,**

v.

**Irene IBARRA, Director of the Colorado Department of Social Services, in her official capacity, Defendant.**

**Civ. A. No. 89–K–1479.**

United States District Court, D. Colorado.

May 7, 1991.

Linda Sue Andersen, Manuel A. Ramos, Peter Komlos–Hrobsky, Linda J. Olson, Legal Aid Society of Metropolitan Denver, Denver, Colo., for plaintiffs.

David P. Temple, Asst. Atty. Gen., Human Resources Section, Denver, Colo., for defendant.

## ORDERS ON MOTION TO AMEND JUDGMENT AND MOTION FOR PERMANENT INJUNCTION

KANE, Senior District Judge.

On March 20, 1991, I granted plaintiffs' motion for summary judgement and invalidated portions of Colorado's Home and Community Based Services program regulations. 759 F.Supp. 664. Although application of the Most in Need Screen or "MINS" is a valid, short hand selection tool which automatically admits deserving applicants into the program, an unsuccessful applicant deserves more due process than the regulations provide. Specifically, the physician review procedure invoked by an unsuccessful applicant who appeals an unfavorable decision is not consistent with federal law. Further, the applicant is not provided clear, written standards on which his appeal may be judged.

The state of Colorado moved to amend the judgment in a motion filed under FRCP 59. The motion directed my attention to several previously unmentioned regulations. These regulations instruct the reviewing physician to determine whether the applicant requires "institution level" care. As explained in my March 20 opinion, institution level care is the standard mandated by 42 U.S.C. § 1396n (c)(1) (1983 and Supp. 1990). The state cites 10 C.C.R. 2505–10 §§ 8.401.13–16 to show the physician review employs the appropriate level of care standard.

I find the regulations inadequate. First, the regulations are vague and non-descriptive. They describe an assessment of whether a "patient's condition require[s] the skilled and maintenance services available in a nursing home." The regulations, however, do not guide HCBS applicants who appeal their unsuccessful application in what they must demonstrate on appeal. Presumably, the applicant already scored above 20 points on the LTC–101: a preliminary screen which qualifies him for automatic admission to a nursing home.

The unsuccessful applicant, however, most likely failed the MINS and now appeals. The regulations do not contain a remedy for the possible arbitrary results an automatic application of the MINS produces. As I documented in my opinion, it is foreseeable for an applicant to require a great deal of care although his disabilities are not one of the four MINS criteria. The regulations do not suggest alternative procedures to evaluate applicants with non-MINS disabilities. The service dependency exception found in § 8.485.415c(2), although magnanimous in that it admits otherwise unqualified applicants, does not salvage the program because qualified applicants could still be denied benefits.

Also, it is not clear from the text that these regulations are even directed at the appeals process. The regulations direct reviewing physicians to admit applicants who require institution level care. As the regulations are written, the MINS could be read to satisfy the level of care requirement called for in § 8.401.13.

Finally, the regulations, as a whole, contradict each other. While § 8.401.13 correctly reflects the federal care level requirement, § 8.485.415c(1) does not. As I

explained in my earlier opinion, the "imminent placement" language is different from the "institution level care" described in the federal statute. Consequently, the State's motion to amend the judgment is denied.

Another motion before me is plaintiff's request for a permanent injunction. IT IS ORDERED:

I. Use of the MINS regulation, in its present form, is enjoined until the regulations are corrected to include a hearing procedure consistent with my opinion and orders. Use of the MINS screen, cured of this defect, is permissible.

II. Future regulations promulgated after my decision must comply with the contents of the opinion. Any objections plaintiffs might have with the new regulations will be heard in a motion for contempt.

III. Named plaintiffs and class members shall be re-enrolled in the HCBS program pending re-evaluation of their HCBS application.

IV. Within 30 days, defendants shall issue notice to all persons who were denied HCBS benefits because they failed the MINS or service dependency exception. The notice must inform these past applicants of the change in regulations and offer them the opportunity to reapply. Plaintiffs shall approve the contents of the notice before it is publicized.

V. Individuals entering alternative care facilities or already residing in alternative care facilities shall also be notified of the new regulations.

VI. Defendants shall issue a press release and prominently display posters advising the public that portions of the MINS regulations are invalid. These posters shall be available in the buildings of the County and State Departments of Social Services, offices of the Department of Health, branches of Denver General Hospital, University of Colorado Hospital, and case management agencies.

IT IS FURTHER ORDERED defendant's motion to amend judgment is DENIED.